UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| AUDREY L. WERNER, )<br>      Plaintiff, )<br>)<br>v. )<br>)<br>CAROLYN W. COLVIN, Acting )<br>Commissioner of Social Security, )<br>      Defendant. ) | Cause No.: 2:14-CV-140-PRC |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Audrey Werner on April 25, 2014, and Plaintiff's Brief in Support of Motion for Summary Judgment [DE 16], filed on August 29, 2014. The Commissioner filed a response on December 5, 2014, and Plaintiff filed a reply on January 15, 2015.

**BACKGROUND**

Plaintiff first filed for supplemental security income on September 30, 2011. The Agency approved the claim on December 8, 2011, but then changed its determination on March 15, 2012, finding her not disabled. She asked the Agency to reconsider, but on August 24, 2012, the Agency reaffirmed its finding that she was not disabled. Plaintiff then asked for a hearing before one of the Agency's administrative law judges (ALJs), which took place by video on July 1, 2013, before ALJ Edward P. Studzinksi. Plaintiff's main representative was attorney Thomas J. Scully, but she was represented by Skully's associate Heather Garay at the hearing.

The ALJ issued a written decision on October 11, 2013, concluding that Plaintiff was not disabled based on the following findings.

1. The claimant has not engaged in substantial gainful activity since September 30, 2011, the application date.

2. The claimant has the following severe impairments: colitis, peripheral artery disease, and right shoulder bursitis.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift and carry up to 10 pounds occasionally, lesser weights more frequently, stand and/or walk about 2 hours in an 8-hour workday, and sit about 6 hours in an 8-hour workday with normal breaks. The claimant should not climb ladders, ropes, or scaffolds, but may occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl.

5. The claimant is capable of performing past relevant work as a dispatcher. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

6. The claimant has not been under a disability, as defined in the Social Security Act, since September 30, 2011, the date the application was filed.

(AR 21-41). Plaintiff then sought review before the Agency's Appeals Council, which denied her request on February 24, 2014, leaving the ALJ's decision as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. On April 25, 2014, Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. This Court thus has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the Agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous

legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734–35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful

review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically

considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

Plaintiff contends that the ALJ erred in finding Plaintiff less than fully credible and that the ALJ ignored contrary evidence and failed to build a logical bridge connecting the evidence to his conclusions with regard to her mental and her physical impairments. The Court considers each argument in turn.

### A. Credibility

In making a disability determination, the ALJ must consider a claimant's statements about her symptoms, such as pain, and how the claimant's symptoms affect her daily life and ability to work. *See* 20 C.F.R. § 416.929(a). Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id*. In determining whether statements of symptoms contribute to a

finding of disability, the regulations set forth a two-part test: (1) the claimant must provide objective medical evidence of a medically determinable impairment or combination of impairments that reasonably could be expected to produce the alleged symptoms; and (2) once an ALJ has found an impairment that reasonably could cause the symptoms alleged, the ALJ must consider the intensity and persistence of these symptoms. *Id*.

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

1. The individual's daily activities;

2. Location, duration, frequency, and intensity of pain or other symptoms;

3. Precipitating and aggravating factors;

4. Type, dosage, effectiveness, and side effects of any medication;

5. Treatment, other than medication, for relief of pain or other symptoms;

6. Other measures taken to relieve pain or other symptoms;

7. Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. § 416.929(c)(3). An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states she is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on her ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p, 1996 WL 374186, at *6 (Jul. 2, 1996). "Because the ALJ is 'in the best position to determine a witness's truthfulness and forthrightness . . . this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 504–05 (7th Cir. 2004)); *see also Prochaska*, 454 F.3d

at 738. Nevertheless, "an ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)).

The ALJ in this case found Plaintiff to be "less than fully credible" based on a number of factors. He noted that Plaintiff had made arrangements to travel to Florida after her alleged onset date, concluding that this demonstrated that her conditions didn't prevent her from traveling out of state. He noted that she had a history of prescription non-compliance. He also explained that she had worked in the past despite her conditions and that her past work ended for reasons other than her health. He mentioned that she alleged financial difficulty but had not investigated no- or low-cost clinics in the past for routine care. He said that she had admitted to "a highly active daily life" and that she did chores, went grocery shopping, and helped care for her young grandson.

Plaintiff had testified that her colitis caused her to have around seven to eight bowel movements per day and that these resulted in about five accidents each week that required at least fifteen minutes to clean up. The ALJ thought that she was exaggerating. He noted that she didn't ask to be excused during the hearing to use the bathroom and that, if she needed to use the bathroom and experienced accidents as frequently as she alleged, he would have expected to see more documentation in the medical records. Moreover, he pointed out that some of her statements to her physicians indicated less severe colitis-related symptoms. With regard to her mental impairments, the ALJ wrote that she was able to participate meaningfully in the hearing, which he thought cast doubt on her alleged memory difficulties. The ALJ thus found her allegations of disability to be "less than fully credible" to the extent they were inconsistent with his RFC determination.

Plaintiff argues that the ALJ's credibility determination was impermissibly vague as he found her to be "less than fully credible," without explaining in detail which portions of her

testimony he found credible and which he didn't. The Seventh Circuit Court of Appeals has criticized such boilerplate assessments on many occasions for exactly this reason. *See Parker v. Astrue*, 597 F.3d 920, 921-22 (7th Cir. 2010); *Bjornson v. Astrue*, 671 F.3d 640, 645 (7th Cir. 2012). But an ALJ's use of the boilerplate language does not amount to reversible error if he "otherwise points to information that justifies his credibility determination." *Pepper v. Colvin*, 712 F.3d 351, 367–68; *see also Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012).

Review of the ALJ's analysis, however, reveals a number of problems. To begin with, the ALJ had no right to hold Plaintiff's inconsistent medication use against her as an "ALJ 'must not draw any inferences' about a claimant's condition from this failure unless the ALJ has explored the claimant's explanations as to the lack of medical care." *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008) (quoting SSR 96-7p). Here, the ALJ said failed to ask Plaintiff about her medications aside from possible side effects. However, he did note that she alleged financial difficulty and lack of treatment due to insurance coverage issues. Financial hardship can be an acceptable reason for non-compliance. SSR 96-7p, at *8. But the ALJ put little stock her claims that she couldn't afford treatment, concluding instead that Plaintiff's credibility was further undercut by her failure to seek low- or no-cost health care. This too is a problem. There is nothing in the record indicating that Plaintiff knew about or had tried to get no- or low-cost health care, and claimants are "entitled to a decision based on the record rather than a hunch." *Wilder v. Chater*, 64 F.3d 335, 338 (7th Cir. 1995).

The Commissioner appears to contend that any error on this point was harmless since the claim of financial hardship finds little support in the record. She is correct that Plaintiff only points to one piece of evidence to support her alleged hardship—a medical record from before the alleged onset date stating that Plaintiff "had discontinued the medications because she has no medical

insurance or money." (AR 705). But the Commissioner's argument ignores the important fact that her application for supplemental security income wasn't rejected for excessive income. *See Goins v. Colvin*, 764 F.3d 677, 680 (7th Cir. 2014) ("[The Plaintiff] applied for Supplemental Security Income, which is a disability benefit available only to persons who have no more than $2000 in cash or the equivalent. If she had had more, her application would have been denied without need to obtain any medical evidence."). The ALJ thus should have explored Plaintiff's reasons for non-compliance and erred in concluding that her credibility was weakened by a failure to seek low- or no-cost medical care.

The ALJ also erred in finding that Plaintiff was able to travel interstate without exploring what sort of accommodations were required. The ALJ acknowledged that someone could be disabled in Florida just as well as in Indiana and included this point only to show that she could travel out of state. No doubt, if one were to take Plaintiff at her word, out-of-state travel, whether by car or plane, would be complicated and made inconvenient (probably very inconvenient) by her symptoms. But this fact alone, without evidence of what sort of specific activities were involved in her travel, doesn't show much of an inconsistency. *Cf. Murphy v. Colvin*, 759 F.3d 811, 817 (7th Cir. 2014) ("[T]he record does not indicate how going on vacation was inconsistent with Murphy's claimed degree of physical limitation.").

A more significant error is found in the way the ALJ discussed the severity of Plaintiff's colitis. He noted that she didn't need to take a bathroom break during the hearing and noted that he would have expected to have seen more documentation in the medical records if her symptoms were as severe as she claimed. The first point is of little value. Going to bathroom eight times per day means that, on average, the person needs to use the restroom every three hours. The hearing began at 9:29 a.m. and ended at 10:33 a.m. There's thus no logical inconsistency. And the ALJ's inference

is further weakened by his acknowledgment that Plaintiff had already used the bathroom twice that day, once immediately before the hearing. Plaintiff also explained that by managing what she ate and drank she could ameliorate her symptoms somewhat, and she testified that she hadn't eaten on the morning before the hearing.

The ALJ also appears to have concluded that the fact that Plaintiff's bedroom was in her daughter's basement (she lives with her daughter to save money) undercut her credibility because there was no bathroom in the basement. There's no indication that this is her preference. That she ended up in a guest bedroom and has a flight of stairs between her and the nearest restroom says little about whether her bowel issues are as bad as she's claimed.

The Court does note that the ALJ also looked to more acceptable factors in evaluating the severity of Plaintiff's colitis, including inconsistences between what she had been telling her doctors and what she testified to at the hearing. The ALJ was also correct to look at whether the medical records supported Plaintiff's claims, though his statement that he would have expected to see more documentation is not very specific. Nevertheless, the errors regarding Plaintiff's colitis are significant and require remand.

The ALJ's discussion of activities of daily living also leaves something to be desired. He failed take into account how Plaintiff's symptoms, in particular those related to her colitis, would be much easier to accommodate at home than in the workplace. *See Spiva v. Astrue*, 628 F.3d 346, 352 (7th Cir. 2010) ("[A]n ability to engage in 'activities of daily living' (with only mild limitations) need not translate into an ability to work full time."). At home, Plaintiff can take a break to go to the restroom without consequences. She can take as long as she needs, and if she has an accident, she can take the necessary time to clean up or take a shower—options that are unlikely to be available at work. The ALJ also noted that she would go to the grocery store, which would of course not be

as accommodating as the home. However, going grocery shopping for an hour or two is still quite different from spending eight hours per day at work. One can take as many breaks as needed at the grocers and there are no time pressures. And an accident at the grocery store—though doubtless more distressing than one experienced at home—is still much more manageable than at a forty-hour-per-week job.

The ALJ's analysis did include some sounder inferences with regard to activities of daily living. For example, being active at home can suggest that Plaintiff's shoulder problems weren't as bad as alleged or that she wasn't depressed to the extent claimed. But a more detailed explanation of the discrepancy would have been helpful.

Finally, the ALJ also discounted Plaintiff's credibility because her conditions had been longstanding but she had worked in the past despite these conditions and lost her job for reasons unrelated to her disabilities. This conclusion is based on an erroneous reading of the record. It is true that Plaintiff had been laid off for reasons that had nothing to do with her disability, but this happened a decade before the alleged onset date at a time when she was not suffering from colitis. The circumstances of someone's firing might call into question that person's credibility, but there's no indication of anything like that here and, at any rate, the ALJ didn't say anything to that effect. That Plaintiff had worked with some of her problems in the past does not mean that she is exaggerating or faking it now. More (and more accurate) explanation is needed.

The ALJ's conclusion that Plaintiff's allegations of memory trouble were undercut by her ability to participate meaningfully in the hearing also would have benefitted from a more thorough explanation. She never alleged that she couldn't follow an hour-long conversation. Rather, she contended that she was unable to maintain concentration and pace at a full-time job.

In sum, the credibility analysis has flaws, especially with regard to how often Plaintiff needs to go to the bathroom and how often she has accidents. These problems go to the heart of this case. The finding is thus "patently wrong" and this case must remanded for a new hearing before the Agency.

### B. Mental Impairments

The ALJ found at Step Two that Plaintiff suffered from medically determinable mental impairments, but concluded that these impairments (memory issues, anxiety, and depression) did not cause more than minimal limitation of Plaintiff's ability to do basic mental work activities and were thus not severe. He discussed the opinions of a number of experts, concluding that Plaintiff's anxiety and depression were well controlled by prescription medications. He considered the "paragraph B" criteria and concluded that Plaintiff had mild restriction of activities of daily living; mild difficulties in maintaining social functioning; and mild difficulties in maintaining concentration, persistence, or pace. He also noted that she had not experienced any episodes of decompensation.

Plaintiff contends that the ALJ's analysis ignored contrary evidence and did not adequately explain his conclusions. The first objection is not well taken; in fact, the ALJ's analysis is quite thorough. He provided a summary of each of the relevant evaluations of mental functioning and explained, briefly, at the end of each why he did or didn't accept the limitations that the expert had put forward. He thus did confront the major lines of evidence contrary to his conclusions and provided the requisite "minimal" explanation.

However, Plaintiff has a point in complaining that the ALJ provided almost no explanation for *why* he reached his ultimate conclusions. And some of the experts thought that Plaintiff's mental functioning was more limited than the ALJ concluded. As this case is being remanded on other

grounds, the conclusion that the limitations were mild should be explained in greater detail. It is also worth considering on remand whether the fluctuations in GAF scores between the various care providers and experts might be connected to the ebb and flow of symptoms that often accompany problems such as anxiety and depression. *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011).

Plaintiff is also correct that the ALJ provided only a cursory explanation of how the mental impairments were incorporated into the RFC finding. The ALJ is required to consider all of a claimant's impairments in combination when crafting the RFC, including those that are not severe on their own. *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003); 20 C.F.R. § 404.1523. On remand, the ALJ should explain how Plaintiff's medically determinable mental impairments (whether severe or not) played into her residual functional capacity and if appropriate, should ask the vocational expert about how any limitations would affect her ability to work.

### C. Physical Impairments

Plaintiff objects that the ALJ's decision failed to explain how colitis affected her RFC and never addressed Plaintiff's testimony that she had to elevate her legs when sitting. Both points are well taken. The ALJ said that the evidence demonstrated that the colitis—at least at the severity Plaintiff was claiming—did not meet the durational requirements. But he found that it was a severe impairment, which indicates that he thought it had *some* more than mild impact on her ability to work, including, presumably, an increased need to go to the bathroom. But he made no finding about what limitations he thought were appropriate. An ALJ's RFC finding must be connected to the evidence by a logical bridge. The explanation here is lacking and should be bolstered on remand so that the connection between the evidence and the conclusions may be more readily traced. Likewise, Plaintiff is correct that the ALJ never addressed her need to elevate her legs despite finding her peripheral artery disease to be a severe impairment. This too should be explained on remand.

## CONCLUSION

For these reasons, the Court **GRANTS** the relief sought in the Plaintiff's Brief in Support of Motion for Summary Judgment [DE 16], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order.

SO ORDERED this 25th day of August, 2015.

s/ Paul R. Cherry<br>
MAGISTRATE JUDGE PAUL R. CHERRY<br>
UNITED STATES DISTRICT COURT